## No. 2424
## Second Circuit

---

## ALBERT E. HUNTER v. H. E. WALDING

(February 8, 1926, Opinion and Decree)

---

*(Syllabus by the Court.)*

1. **Louisiana Digest—Agriculture—Par. 9, 12.**

One who with his family resided on his plantation and has a growing crop thereon cultivated by a tenant working on "halves" is a planter, and a merchant furnishing necessary plantation supplies for use in making and that were actually used in making the crop has a privilege on such crop for the price of the supplies. Civil Code, Art. 3217; Cain vs. Pullen, 34 La. Ann. 511; Laleire vs. Wiltz, 31 La. Ann. 436.

Appeal from the Thirteenth Judicial District Court of Louisiana, Parish of Rapides, Hon. R. C. Culpepper, Judge.

Judgment affirmed.

George J. Ginsberg, of Alexandria, attorney for plaintiff, appellee.

Peterman, Dear and Peterman, of Alexandria, attorneys for defendant, appellant.

## STATEMENT OF THE CASE

REYNOLDS, J. In this suit Albert E. Hunter seeks to recover from the defendant H. E. Walding, the sum of $266.43, a balance claimed to be owing on account for necessary plantation supplies alleged to have been furnished defendant to enable him to make a crop of aricultural products during the year 1923 and for $50.00 as damages.

The suit was aided by a writ of sequestration under which 1115 pounds of seed cotton was seized and on which plaintiff claims a privilege for the amount of his claim as furnisher of necessary plantation supplies to make the cotton.

Defendant denied owing plaintiff the amount claimed and especially denied plaintiff's claim of a privilege and specially denied liability for items amounting to $53.17 charged on the account sued on as having been delivered to E. R. Haworth, a tenant on defendant's land and who cultivated the cotton sequestered, and specially denied liability for the item of $50.00 as attorney's fees.

On these issues the case was tried and there was judgment in favor of the plaintiff and against the defendant for the sum of $266.43 with legal interest thereon from judicial demand but plaintiff's claim for $50.00 attorney's fees was rejected. The writ of sequestration was maintained and plaintiff's claim was ordered paid out of the proceeds of the sale of the cotton in preference to all other persons.

From this judgment the defendant appealed. Plaintiff did not appeal from that part of the judgment rejecting his claim for $50.00 attorney's fees.

## OPINION

Plaintiff filed in evidence an itemized statement of the account sued on showing a balance claimed to be due of $266.43, and testified in regard thereto as follows:

Page 2:

"Q. Before we go any further, Mr. Hunter, did you yourself handle these items?

"A. Yes, sir.

"Q. You are familiar with them personally?

"A. Yes, sir.

"Q. It is not a question of a clerk in the store handling them?

"A. No, sir.

"Q. Do you keep the books?

"A. Yes, sir.

"Q. Now, to our petition we have attached an itemized statement. Disregarding the items thereon shown as taken by one E. R. Hathorn, will you kindly examine that and say if it is correct?

"A. That is an exact copy of my books, yes, sir."

This testimony established the correctness of the account sued on.

But defendant insists that there are certain items on the account, such as tobacco, candy, lace, aspirin, that are not necessary to the making of a crop and that for the price of these plaintiff has no privilege.

We have gone over the account and segregated all such items and find that they only aggregate $11.30 in the account sued on of $266.43. Should we refuse to sustain the claim of a privilege as to these items plaintiff would still be entitled to a privilege for the difference of $255.13 and this amount far exceeds the value of the cotton sequestered.

Defendant also insists that plaintiff was not entitled to a privilege because he did not reside upon the land on which the cotton was grown. This contention is not sound. Defendant's own testimony shows that he did live upon the land on which the cotton was grown. He testified, page 25:

"Q. Where were you living?

"A. About two and a quarter miles from Hot Wells, on what I would call the Hineston road, two miles south of Hot Wells.

"Q. Was that where this cotton was raised?

"A. Yes, sir.

"Q. Was your family living there while your cotton crop was being worked and raised?

"A. Yes, sir.

"Q. How many have you in family?

"A. I have a wife and four children."

Defendant raised the cotton through the labor of his tenant, Hathorn, who lived on the land and cultivated it "on halves" for defendant. The crop therefore belonged to defendant and he owed Hathorn one-half of it for his labor in producing it.

Defendant further insists that he does not owe items on the account amounting to $53.17 charged to him but delivered to Hathorn, for the reason that he did not authorize plaintiff to deliver these items to Hathorn or to charge them to him, defendant, and defendant swears, positively, that he did not so authorize plaintiff. Plaintiff, on the other hand, swears with equal positiveness that defendant did authorize him to deliver the articles to Hathorn and charge them to him, defendant. He testifies, page 17:

"Q. Mr. Hunter, did Mr. Walding tell you to charge Mr. Hathorn's account to him?

"A. Mr. Walding and Mr. Hathorn came to my store together, and Mr. Walding said: 'Mr. Hathorn is going to work my place on halves, and I want you to let him have what merchandise he needs, and I will pay it—charge it to me'. They adjusted that account, I understood from what they said between them, out of the proceeds of the crop. Mr. Walding authorized me to charge these goods to him, for Mr. Hathorn's use.

"Q. Who else was there when he made that statement?

"A. Mr. Hathorn; I can't recall any one else, but I think both Mr. Walding and Mr. Hathorn will admit that.

"Q. Do you remember when that was?

"A. I don't know but I judge that it

was just before Mr. Hathorn got the first item, because he had no account with me. "Q. Where was that—in your store? "A. Yes, sir, and Mr. Hathorn, until he got that first item, had not been getting anything from me. It was in the store where I live, where all these transactions were made."

The District Judge who heard the witnesses testify and probably also knew them personally, accepted the testimony of the plaintiff as true, and we do not think he erred. Plaintiff's testimony on this point finds corroboration in the fact that he did charge the items delivered to Hathorn on defendant's account and in the further fact that he had seized certain cotton belonging in indivision to defendant and Hathorn and that after defendant and Hathorn had made a division of the cotton between them plaintiff released the seizure as to the share assigned to Hathorn and held it as to the share assigned to defendant.

We think that plaintiff has established his claim by a preponderance of the evidence.

Plaintiff's right to have the cotton sequestered is not questioned on any other ground than that he did not have any privilege on which to base a sequestration. We have found that he did have a privilege as furnisher of necessary plantation supplies.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be affirmed with costs.